UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

LEON WILLIAMS, JR.                    CIVIL ACTION NO. 14-cv-0118

VERSUS                                JUDGE WALTER

TIMOTHY KEITH                         MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

A Webster Parish jury convicted Leon Williams ("Petitioner") of distributing cocaine, and he received a 20-year sentence. The conviction and sentence were affirmed on direct appeal. State v. Williams, 69 So.3d 556 (La. App. 2d Cir. 2011), writ denied, 76 So.3d 1200 (La.).[1] Petitioner next pursued a post-conviction application in state court. He now seeks federal habeas corpus relief on several grounds. For the reasons that follow, it is recommended that his petition be denied.

**Relevant Facts**

Cody Manuel served six years in the Marine Corps and received an honorable discharge, then worked building homes, but he accumulated a minor criminal history for fighting, felony theft, and other non-violent offenses. He was unemployed and on parole

_____

[1]Petitioner was convicted in the same state court of possession of cocaine in connection with a similar but separate drug transaction. That conviction was affirmed in a separate appeal. State v. Williams, 81 So.3d 220 (La. App. 2d Cir. 2011), and this court denied habeas relief with respect to that conviction in 14-cv-117.

when he received traffic tickets for driving without a license, no insurance, and reckless operation of a vehicle.  The charges were misdemeanors that would likely result in fines in Minden City Court, but Manuel was concerned that he did not have money to pay the fines and that it might endanger his parole status.

Manuel approached the Minden police about serving as a confidential informant, and the police agreed to help him with his traffic tickets in exchange for informant work.  Manuel met with Lieutenants Marvin Garrett and Dan Weaver, who searched him for money and drugs, fitted him with audio and video recording devices, and provided him $50 in cash (the serial numbers for which were recorded).  The officers drove Manuel to a place near his home, and they parked in a hidden area nearby where they could monitor the audio.

Manuel borrowed his neighbor's telephone and placed a call to a person whose street name was "the Colonel" and said he was ready to buy.  Manuel noted for the recording the phone numbers he dialed.  A witness with the local Office of Community Services testified that she had in her records the same telephone number as the cell phone number for Petitioner, and Petitioner had used that same number for contact regarding his child for quite some time.

Petitioner soon arrived at Manuel's house and expressed that he was paranoid because another local dealer had recently been arrested.  Manuel told Petitioner not to be paranoid, and Petitioner replied, "You ain't in that type of business.  When you get in that business, you'll know."  Manuel testified that he had placed his $50 on a table.  Petitioner picked it up

and, as he left, he told Petitioner to look behind his TV.  Petitioner did, and he found a cigarette package that contained crack.  Manuel said Petitioner must have placed it there when he was in that area looking out the window and expressing his paranoia.

Manuel waited about 15 minutes, as if he were inside smoking the crack, before leaving.  He also explained that a dealer would sometimes circle around the block to make sure the police had not arrived after the deal.  Despite the amount of time Manuel waited, Petitioner drove up beside him as Manuel was walking to where the officers were hidden. Petitioner asked where Manuel was going, and Manuel said he was walking to his mother's house.  Petitioner offered a ride part of the way there, and Manuel accepted.  Petitioner asked if Manuel had "done had a hit," and Manuel said he had already smoked the drugs and was tripping.  Petitioner asked if Manuel was carrying a "straight hitter" (smoking pipe), and Manuel said he was not.  Petitioner explained that he was paranoid that the police would pull him over at any time, implying that he did not want incriminating evidence such as a pipe in the car.

Manuel turned over the drugs to the officers, and the crime lab found them to be cocaine.  The recordings were of spotty quality, but they were played for the jury, and Manuel and the officers testified in detail about what was happening, the meaning of street lingo, and the like.  The jurors were also provided a transcript prepared by the district attorney's office.  Manuel testified that Petitioner was the man he referred to as the Colonel and from whom he purchased the drugs.

**Sufficiency of the Evidence**

Petitioner asserts several claims under the heading of ineffective assistance of counsel. One of those claims argues that Petitioner should be "entitled to relitigate the sufficiency of evidence claims based on cumulative effect of all errors due to ineffective counsel which was not ruled upon on direct appeal."  Petitioner did not raise sufficiency of the evidence on direct appeal or in his post-conviction application, so perhaps he faults counsel for not doing so.  The State responds that Petitioner did not exhaust his state court remedies with respect to this claim, which would mean that it is procedurally barred.  The State appears to be correct but, rather than perform a cause and prejudice analysis related to the procedural bar, it is simpler to address the claim on the merits.

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979).  The Jackson inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 113 S.Ct. 853, 861 (1993).  And "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S.Ct. 2, 4 (2011).

Petitioner argues that the Manuel was untruthful, the transcript of the recordings was unreliable, the police did not search Manuel's house for drugs before the buy, and the like. Most of those issues were explored at the trial, and defense counsel attempted to create reasonable doubt by exposing such matters during his cross-examination. The jury, however, was not persuaded and chose to convict. When the evidence that was presented is viewed in the light most favorable to the prosecution, a rational juror could have easily chosen to credit Manuel and find Petitioner guilty of distributing cocaine. Accordingly, the sufficiency of the evidence claim is without merit.

**Access to the Courts**

Petitioner argues that he is not educated and had difficulty filing the proper post-conviction application while relying on his memory, unaided by a transcript. He complains that he did not have adequate legal assistance from a person trained in the law and that he was stymied by the lack of an adequate law library at the Bayou Dorcheat Correctional Center.

A prisoner does have a right to access the courts to litigate challenges to his conviction, and he may make out a civil rights claim under 42 U.S.C. § 1983 if shortcomings in the law library or legal assistance program actually hinder his efforts to pursue a legal claim. Lewis v. Casey, 116 S.Ct. 2174 (1996). Prisoners have also argued that a lack of adequate legal assistance warrants equitable tolling to excuse an untimely habeas application,

but the argument is usually rejected.  See Krause v. Thaler, 637 F.3d 558, 561 (5th Cir. 2011).

Petitioner was able to file a timely post-conviction application and federal petition, so tolling is not an issue.  The successful filing also undermines a civil rights claim, and this habeas petition is not the proper means of pursuing a Section 1983 claim.  Finally, Petitioner was no longer housed at Bayou Dorcheat by the time he filed this habeas petition.  Petitioner may not have been satisfied with the legal services and resources afforded him at each place he was housed, but that does not make out a freestanding habeas claim that warrants setting aside his state court conviction.

**Post-Conviction Ruling**

Petitioner's post-conviction application raised several claims of ineffective assistance of counsel.  He argues in his federal petition that it was erroneous for the state court to deny his application without appointing counsel, allowing discovery, or holding an evidentiary hearing at which former counsel would be called to testify.

This claim fails because "infirmities in State habeas proceedings do not constitute grounds for relief in federal court."  Rudd v. Johnson, 256 F.3d 317, 319 (5th Cir. 2001).  See Kinsel v. Cain, 647 F.3d 265, 273 (5th Cir. 2011) ("no state habeas infirmities" rule barred habeas review of claim that state appellate court violated due process during post-conviction proceedings).

**Crime Lab Report**

Petitioner argues that the State introduced the cocaine and crime lab report without calling the person who conducted the lab test, in violation of his Confrontation Clause rights. The State responds that Petitioner did not exhaust his state court remedies with respect to this claim, and that appears to be correct.  That need not be addressed, however, because the claim fails on the merits.

Randall Robillard of the North Louisiana Crime Lab testified at the trial that he personally tested the seized substance and determined that it was cocaine.  Tr. 723, 730-31. Defense counsel was allowed to cross-examine him.  This claim is based on a false representation of the facts by Petitioner.  Habeas relief is not warranted.

**<u>Brady</u> Violation; Suppression of Audio/Video Tape Until Trial**

Petitioner's argument on this claim is presented in a single sentence: "The State suppressed access to the audio/video tape of the alleged incident until trial itself in violation of <u>Brady</u> resulting in defense counsel (sic) inability to investigate and prepare any meaningful defense to exclude its use."  Petitioner does not point to facts in the record to make a factual basis for this claim.

Defense counsel was in court the day before the trial started and mentioned that he had discussed with Petitioner arrangements for Petitioner to view the video of the drug buy. His statement implied that counsel himself had already watched the video.  Tr. 204-05. When the State moved to introduce the recording at trial, defense counsel objected solely on the

grounds that the prosecutor had not made a proper foundation.  The prosecutor then questioned Lt. Garrett to establish that the recording was the same one taken from Manuel after the drug transaction.  The court admitted the recording into evidence.  Tr. 667-70.

Petitioner first presented this claim in his post-conviction application.  The State responded that the claim was not supported by evidence.  A state trial court found that there was nothing in the record to indicate that defense counsel was unfairly prejudiced by any delay regarding audio or video tapes, and counsel had made no objection regarding any delay. Accordingly, the claim was denied.

The state court denied this claim on the merits, so relief is not available unless that decision was (1) contrary to or involved an unreasonable application of clearly established Supreme Court precedent or (2) based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Petitioner has never pointed to any particular facts that would undermine the state court's decision.  Furthermore, the record shows that the recordings were turned over during trial (if not before), and the Supreme Court has never expressly held that evidence turned over to the defense during trial has been suppressed within the meaning of Brady.  The Fifth Circuit has held that such evidence is not considered to have been suppressed.  Powell v. Quarterman, 536 F.3d 325, 335 (5th Cir. 2008).  Finally, a Brady claim requires that the evidence at issue be favorable to the defense. The recordings at issue were not favorable; they were devastating to the defense.  Relief is not permitted on this claim.

**Continuance Issues**

    **A. Relevant Facts; State Court Ruling**

    Defense counsel appeared in court on the day before trial and moved for a continuance.  He explained that Petitioner had previously been represented by attorney Melissa Sugar, Petitioner represented that Ms. Sugar was in possession of discovery relevant to this case, and current defense counsel had not been able to obtain the information from Ms. Sugar despite issuing a subpoena duces tecum and making other efforts.  Counsel said that Petitioner claimed Ms. Sugar's files included investigator interviews and video tapes, potential exculpatory evidence (unspecified) and the identity of possible witnesses.

    The judge clarified that the case with respect to which Ms. Sugar allegedly had exculpatory evidence was a separate case of drug distribution that the prosecution was not about to try.  The judge explained that he had offered to send a deputy to Ms. Sugar's office, and he had attempted to call her that morning, without success.  He was comfortable, however, that the evidence being discussed "was in another case, that case is not being tried by the District Attorney's office; therefore, I deny the continuance."  Tr. 205-10.  Defense counsel responded that Petitioner said an investigator had interviewed "the confidential informant in the distribution charges" and that the notes should be in Ms. Sugar's file.  Counsel apologized for bringing the matter up late, but he said he had been assured many times that the material would be made available.  The judge responded that the various cases had been going on for four years and there had been multiple hearings in multiple cases with

multiple problems out of Ms. Sugar's office, so the continuance was denied.  Counsel noted his objection.  Tr. 210-11.

Petitioner argued in his post-conviction application that former attorney Sugar failed to turn over files that Petitioner claimed contained exculpatory evidence.  (It is not clear that Petitioner presented in state court an argument that the trial court erred in denying a continuance.)  The trial court ruled that Petitioner had not identified any allegedly exculpatory evidence and could not make out a claim based on his conclusory allegations.

### B. Denial of Continuance

Petitioner's federal petition argues that the trial court abused its discretion when it denied the continuance. Trial judges require a great deal of latitude in scheduling trials.  It is required that they assemble the witnesses, lawyers, and jurors at the same place at the same time, "and this burden counsels against continuances except for compelling reasons."  Morris v. Slappy, 103 S.Ct. 1610, 1616 (1983).  Consequently, broad discretion must be granted trial courts on matters of continuances.  Id.  There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process.  The court must look to the circumstances present in the case.  Ungar v. Sarafite, 84 S.Ct. 841, 850 (1964).  "[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel."  Morris, 103 S.Ct. at 1616, quoting Ungar.

Defense counsel offered reasonable grounds for a continuance.  The trial judge, after noting continuing difficulties in obtaining Ms. Sugar's file and the lack of specific indication of prejudice in this case, denied the request.  The decision was made after full consideration of the defense's argument and does not appear to have been arbitrary.  When the state court addressed the issue again in post-conviction, the court noted that Petitioner had yet to specify any evidence that was unavailable to the defense due to the denial of the continuance.  The state court's decision was a reasonable one based on the facts presented and was not an objectively unreasonable application of clearly established Supreme Court precedent.

### C. Ineffective Assistance of Counsel

Petitioner's federal petition argues that trial counsel was ineffective for failing to timely request a continuance.  The applicable Strickland standard and the deference due the state court's decision are discussed below in detail. The record shows that counsel had been assured by Ms. Sugar that the files would be provided before trial, and he cannot be faulted for believing that she would do what she said.  It is unfortunate that Ms. Sugar did not honor her promises, but defense counsel is not rendered constitutionally deficient as a result.  There is no reason to believe that a continuance would have been granted had counsel asked for it earlier and, as noted above, Petitioner has not been able to establish prejudice stemming from the lack of a continuance.  Several years have passed, but Petitioner has not yet identified one piece of evidence or a single witness that could have been gained by the continuance and that might have put the case in a different light.

**Ineffective Assistance of Counsel**

### A.  Introduction

The rest of Petitioner's claims argue that his attorney rendered ineffective assistance. To prevail on such claims, Petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

### B.  Habeas Review

The trial judge issued a written ruling that addressed Petitioner's several ineffective assistance claims.  Tr. 105-111.  Petitioner sought review by the state appellate court, which rejected the application in a summary opinion that Petitioner "has failed to meet his burden of proving that the requested relief should be granted."  The Supreme Court of Louisiana denied writs without comment.  The State did not include the decisions of the appellate court and Supreme Court in the record it filed with this court but, fortunately, those decisions can be found in the attachments to the prisoner's petition.

Petitioner's claims were adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007).  The Strickland standard is a general standard, so

a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." <u>Knowles v. Mirzayance</u>,129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." <u>Harrington v. Richter</u>, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. <u>Id</u>. Thus, "even a strong case for relief  does not mean the state court's contrary conclusion was unreasonable." <u>Id</u>. The lack of detailed reasoning in the state court's decisions does not change the standard. "Section 2254(d) applies even where there has been a summary denial." <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388, 1402 (2011).

**C. No Objection to Transcript**

Petitioner argued in his post-conviction application that the trial court erred in allowing the jury to use a transcript of the audio from the surveillance video because it was not a true and correct copy signed and certified by a court reporter and took the defense by surprise. The state court denied the claim, but the portion of its ruling that gives the reasons is not legible on the copy provided by Petitioner. The federal petition changed gears and presented the claim under the heading of ineffective assistance of counsel. It is presented in a single sentence: "The State introduced the transcript of the alleged audio version of the alleged drug sale without establishing it was the original or certified copy of the original due

to defense counsel (sic) failure to object to this inadmissible evidence depriving me of a fair trial."

The record shows that defense counsel did move to exclude the transcript, but the judge cited several appellate court decisions and said such transcripts could be used once a foundation was laid for admission of the recordings.  He stated that the jury would be admonished that the transcript was there to assist them, but the recording was the actual best evidence of what was being stated in the course of the transaction.  The transcripts would be taken from the jurors after they were used in the presentation of the recordings.  Tr. 646-47. Counsel had also objected earlier to the relevance of certain recorded discussions that did not relate directly to a drug transaction.

Counsel also moved for a mistrial and argued that he had spotted mistakes in the transcript, which was prepared by the District Attorney and not a certified court reporter. The mistakes regarded which man spoke a couple of lines ("You done had a hit" and "I ain't taking no chances"), and the transcript had "See what's up" where counsel said he heard, "See what's happening."  The judge responded that the audio-video recording had been played for the jury "ad nauseam" three or four times, the jury had been admonished twice that the recording rather than the transcript was the best evidence of what was said, defense counsel had extensively cross-examined witnesses about what was said and by whom, and defense counsel had used the recording to impeach witnesses.  The judge denied the request for mistrial.  Tr. 937-40.

Petitioner's claim that the transcript was admitted because defense counsel failed to object is plainly not supported by the record.  Furthermore, Louisiana courts have held that a transcript of a recording is admissible in a criminal trial because it provides the jury with a convenience in following the playback.  State v. Burdgess, 434 So.2d 1062, 1066 (La. 1983); State v. Norah, 131 So.3d 172, 193 (La. App. 4th Cir. 2013).  Federal courts have also held that it is within the discretion of the trial court to allow a transcript to be used to assist the jury as it listens to a tape.  U.S. v. Thompson, 482 F.3d 781, 788 (5th Cir. 2007). Petitioner has not cited any authority for the proposition that a transcript must be certified by a court reporter, and he has not demonstrated that there were any uncorrected mistakes in the transcript or other grounds that would have supported a successful objection that counsel could have raised to exclude the transcript.  This claim lacks merit.

Petitioner argued for the first time, in an amended petition, (Doc. 20), that he realized his name was not on the transcript, and he urged counsel to object on that ground. Petitioner says the prosecutor "altered the transcript to make it appear that Leon Williams (Petitioner) is the Colonel" when his street name is actually Coronel.  There may be misunderstanding here because colonel is pronounced "kernel" despite its unique spelling. Furthermore, Manuel testified that it was Petitioner who sold him drugs after he dialed a number that was linked to Petitioner.  There was no mistake. The evidence showed that it was Petitioner, by any name, who sold the drugs.

### D.  No Search of informant's Home

Petitioner argued in his post-conviction application that the police failed to search the informant's house for drugs to ensure that the drugs the informant gave police were not already possessed by him.  The state court denied the claim because there was no evidence that a search of the home might have changed the result.  Petitioner's federal petition takes a new approach and presents the claim under the heading of ineffective assistance of counsel. He argues that the State failed to search the informant's home even though he was a known drug addict "based upon counsel's failure to object to introduction of said drugs based on said grounds."

The police admitted that they did not search Manuel's home to ensure that it was free of drugs.  That fact did not provide a basis for defense counsel to exclude introduction of the drug evidence, but it did give counsel a point that could be made during cross-examination. Counsel took advantage of that opportunity and questioned the police about the lack of a home search.  Tr. 769.  Lt. Garrett responded that the officers chose not to search Manuel's home because they were concerned Petitioner could drive by, or the nearby neighbors, which included a homeless shelter, might see the police presence and spoil the investigation.  He also said crack users such as Manuel don't tend to leave crack lying around the home; they smoke it as soon as they get it.  Tr. 769-70.

There is no objection that counsel could have made under these circumstances that would have resulted in the exclusion of the drug evidence, and failure to make a meritless

objection is not ineffective assistance.  <u>Johnson v. Cockrell</u>, 306 F.3d 249, 255 (5th Cir. 2002); <u>Clark v. Collins</u>, 19 F.3d 959, 966 (5th Cir. 1994).  Counsel made the most he could of this issue by cross-examination and argument.  It simply was not valid grounds to exclude any evidence.

Petitioner also argues that the recordings do not show a drug transaction or reflect talk about one.  The recordings were certainly admissible.  The language captured, together with Manuel's testimony about what happened, plainly reflected a drug transaction.

### E.  No Objection to Comment on Failure to Testify

Petitioner argues that defense counsel failed to object and move for a mistrial when the prosecutor improperly commented on Petitioner's failure to testify.  It does not appear that Petitioner presented this claim to the state courts on direct appeal or in his post-conviction application, which means he failed to exhaust his state court remedies.  The court also sees no support in the closing arguments (Tr. 946-79) for the claim.  Petitioner has offered a single sentence in support of the claim, without record reference, quotation, or even a general description of the comment that he believes was inappropriate.  Absent any factual support, this claim lacks merit.

### F.  No Objection to Vouching for Witnesses

Petitioner argued on direct appeal that the prosecutor made a number of statements that improperly vouched for witnesses.  The prosecutor's arguments had been made in response to the defense's attack on the professionalism of the police investigation.  The

prosecutor made statements that he had an advantage over the jurors because "I've lived with this case for a pretty good while" and had the opportunity to "know exactly what's going on." The prosecutor said he was "satisfied when I got this case from law enforcement," and he talked about the many drug cases he had that were "just like" this one.  In rebuttal, the prosecutor took umbrage at what he perceived as defense counsel casting aspersions upon the law enforcement witnesses.  He even said, "I know those two men, I'm going to vouch for them."  Tr. 978.

A prosecutor may argue fair inferences from the evidence that a witness has no motive to lie, but it is improper for a prosecutor to express a personal opinion on the credibility of a witness.  U.S. v. Young, 105 S.Ct. 1038 (1985); Woodfox v. Cain, 609 F.3d 774, 805 (5th Cir. 2010); U.S. v. Gracia, 522 F.3d 597, 600 (5th Cir. 2008).  Appellate counsel argued on direct appeal that the argument was reversible error.  The appellate court found that the claim of error was waived because trial counsel did not make a contemporaneous objection.  The appellate court said, in the alternative, that it could not discern from the record that the argument improperly influenced the jury.  The evidence, though substantially circumstantial, was overwhelming and included incriminating statements made by Petitioner that were caught on tape.  The prosecutor's argument was deemed, at most, harmless error.  State v. Williams, 69 So.3d at 560.  Petitioner then argued in his post-conviction application that counsel was ineffective for not raising the objection and preserving error, and the state court summarily denied this and other Strickland claims.

The Fifth Circuit has "recognized that deciding whether to object before a jury is a quintessential matter of trial strategy not to be second-guessed." Thomas v. Thaler, 520 Fed. Appx. 276, 281 (5th Cir. 2013).  Many attorneys choose not to object to questionable argument because doing so might draw undue attention to the harmful comments. Id., citing Hernandez v. Thaler, 398 Fed. Appx. 81, 87 (5th Cir. 2010).

That would have been a concern in this case despite the prosecutor improperly vouching for witnesses.  Raising the objection would have risked giving extra attention to a statement that jurors might otherwise overlook or not find important.  Some attorneys might have objected under the circumstances, but many reasonable attorneys would choose not to object under the circumstances.  Considering the leeway that counsel is afforded in such matters, and the unlikelihood of prejudice from the  remarks, the state court was not unreasonable to reject this final claim.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another

party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 24th day of January, 2017.

Mark L. Hornsby
U.S. Magistrate Judge